United States District Court
Southern District of Texas
**ENTERED**
January 04, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Engracia Rodriguez, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-17-3102 |
| | § | |
| Nancy A. Berryhill, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

Engracia Rodriguez appeals the Commissioner's final decision denying her application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). (D.E. 4.) Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 7) and Defendant's Cross-Motion for Summary Judgment (D.E. 8). Having carefully considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

### 1. Procedural Posture

Rodriguez applied for disability insurance benefits on July 9, 2014. (Tr. 215.) Rodriguez claimed that she was disabled due to physical limitations with an alleged disability onset date of June 2, 2014. (Tr. 242, 245.) In her application,

Rodriguez stated that she was born in 1967 and worked as a laundry presser until May 2014. (Tr. 242, 246.) The Social Security Administration (SSA) denied Rodriguez's application on September 23, 2014, and Rodriguez filed a request for reconsideration. (Tr. 89, 97.) Upon reconsideration, the SSA again denied her application on December 17, 2014. (Tr. 99.)

Rodriguez requested a hearing on January 8, 2015 (Tr. 105), and Administrative Law Judge (ALJ) David Gutierrez held a hearing on March 8, 2016. (Tr. 28.) On March 31, 2016, the ALJ issued a decision finding Rodriguez not disabled. (Tr. 7.) Rodriguez filed the present complaint in federal court to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five-Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the

first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ must decide whether the claimant's impairment is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c). A person who does not have a "severe impairment" is not disabled. *Wren*, 925 F.2d at 125. An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Once the ALJ finds that the claimant has a severe impairment, the ALJ must determine, at step three, if the impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d); *see* Listing of Impairments at 20 C.F.R.

Part 404, Subpart P, Appendix 1. If the requirements of a listing are met, the individual will be considered disabled. *Id.*

When the claimant's impairments do not meet or equal a listed impairment, the ALJ must proceed to assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). To assess the RFC, the ALJ must consider all medically determinable impairments, including those not labeled severe at step two. 20 C.F.R. § 416.945(a)(2); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5.

The RFC is used to determine whether the claimant can perform past relevant work at step four. *Id.* If the claimant is capable of performing the work the claimant has done in the past, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the ALJ finds that the claimant's RFC precludes the claimant from performing past relevant work, the ALJ must proceed to step five. 20 C.F.R. § 404.1520(g)(1). At this step, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Id.*

### B. Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supported the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.*

### 3. The ALJ's Decision and the Administrative Records

### A. Hearing

At Rodriguez's hearing, the ALJ heard testimony from Rodriguez and a vocational expert (VE). Rodriguez testified about symptoms related to cerebral vascular accident and morbid obesity. (Tr. 31–32.) She testified that she saw a

doctor once a month and was not taking her medications because she could not afford them. (Tr. 33–34.)

Rodriguez also testified about the exacerbation of her congestive heart failure in December 2015 and the resulting hospitalization. (Tr. 35–36.) She testified that she was diagnosed with stage-four chronic kidney disease. (Tr. 35.) She stated that due to shortness of breath, she had to sleep in a sitting posture and spend most of her waking hours sitting at home. (Tr. 36–37.) Rodriguez testified that she had a stroke that affected the right side of her body, and, as a result, she needed a walker to move around without falling and had limited writing ability. (Tr. 38–39.) As to diabetes, Rodriguez stated that she only took insulin while she was in the hospital and that she is unable to afford the prescribed pills. (Tr. 39–40.)

Rodriguez testified about her history of hospitalization. She stated that she was hospitalized in February or March of 2014 for three months, two more times in 2015, and again in December 2015. (Tr. 41–42.) The hospitalizations were for stroke, congestive heart failure, swelling of the legs, and a cataract surgery on both of her eyes. (Tr. 42–43.) Rodriguez testified that she has limited vision in one of her eyes but could still see, read, and drive. (Tr. 42–43.)

Rodriguez testified about her activities of daily living. She stated that she spent her days by herself at a trailer home she shared with her adult children. (Tr. 44.) While her children were at work Rodriguez took naps a couple of times per

day due to fatigue, and could only stand up for four to five minutes to walk around the kitchen to make simple meals. (Tr. 45–46.) She confirmed that while sitting, she was able to lift a gallon of milk every four or five minutes. (Tr. 46.)

Based on the testimony and the consulting examiner's report, the VE testified that Rodriguez was not able to return to her past work as a laundry presser. (Tr. 47–48.) The ALJ asked the VE what jobs Rodriguez could perform with the RFC to "lift up to 20 pounds occasionally, carry 10 pounds frequently, stand, walk six hours, sit six hours, no ladders, ropes, or scaffolds. The rest of the postural limitations because of obesity would be occasional. Overhead reach, reach, handle, finger and feel would be frequently bilaterally [sic]." (Tr. 48.) The ALJ required the jobs to be classified as light and sedentary. (Tr. 48.) The VE testified that Rodriguez could work as a fitting room recovery clerk, office cleaner, cafeteria attendant, final assembler, sorter, and document preparer. (Tr. 48.)

Rodriguez's representative asked the VE if Rodriguez would be able to perform the jobs the VE listed if she had to take breaks three or four times per day to sit down for 20–25 minutes. (Tr. 49.) The VE testified that Rodriguez would not be able to obtain competitive employment in the local and national economy with those additional limitations. (Tr. 49.) When asked whether Rodriguez could find competitive employment if her RFC required her to take two breaks per day, lasting 45 minutes to one hour, to take naps, the VE testified that she could not. *Id.*

Finally, the VE testified that Rodriguez could not find competitive employment if her RFC limited her to standing and walking a cumulative one hour per work day. (Tr. 49–50.)

### B. ALJ's Decision

At step one, the ALJ found that Rodriguez had not engaged in substantial gainful activity since June 2, 2014. (Tr. 12.)

At step two, the ALJ found that Rodriguez had several severe impairments: hypertension, congestive heart failure with a history of cerebrovascular accident, diabetes mellitus, and morbid obesity. (Tr. 12.) The ALJ found the following impairments non-severe: vision problems, pulmonary disease, chronic diabetic and hypertensive renal disease, edema, and anemia. (Tr. 13.)

At step three, the ALJ did not find that any of Rodriguez's impairments met or was medically equivalent to a listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. (Tr. 14.) The ALJ took into account the combined effects of Rodriguez's obesity with her other symptoms throughout the entire sequential evaluation process. (Tr. 14.)

Before reaching steps four and five, the ALJ determined that Rodriguez had the following RFC:

> Specifically, the claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for 6 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday. Additionally, the claimant can

> never climb ladders, ropes, or scaffolds. All other postural
> activities limited to occasional due to morbid obesity. The
> claimant is limited to frequent bilateral overhead reaching,
> reaching [sic], handling, fingering, and feeling.

(Tr. 15.) The ALJ stated that he considered all impairments, both severe and non-severe, as well as all symptoms, including complaints of pain, to make the RFC finding. (Tr. 14–15, 20.) After summarizing Rodriguez's testimony about her symptoms, the ALJ found that no objective medical evidence supported Rodriguez's claim that her symptoms, fatigue, and the side effects of medication were so severe as to prevent her from doing the jobs that a person with Rodriguez's RFC could perform. (Tr. 16, 20–21.)

The ALJ also found that Rodriguez's statements about her symptoms were "not entirely consistent" with the medical record. (Tr. 17.) Here, and in other parts of the decision, the ALJ considered Rodriguez's testimony and medical reports noting that Rodriguez was not compliant with her prescribed medications. (Tr. 15, 17–19.) The ALJ construed this to suggest that "the symptoms were not as limiting as the claimant alleged in connection with this application." (Tr. 19.)

The ALJ also discussed opinion evidence: a report by the SSA's internal medicine consultative examiner (Hanna J. Abu-Nassar, M.D.); the opinions of the medical examiners at Disability Determination Services; and Rodriguez's own testimony regarding daily activities, restrictions, and symptoms. (Tr. 19–20.)

At step four, the ALJ determined that Rodriguez was not able to perform any of her past relevant work. (Tr. 21.) At step five, the ALJ found that Rodriguez could perform other work in the national economy as a fitting room recovery clerk, cafeteria attendant, final assembler, sorter, or document preparer. (Tr. 22.)

Accordingly, the ALJ concluded that Rodriguez has not been under a disability from June 2, 2014, through the date of the decision, March 28, 2016. (Tr. 22.)

### 4. Analysis

#### A. Severity Determination

Rodriguez argues that the ALJ erred at step two in finding that the combined effects of her non-severe conditions (chronic kidney disease, edema, anemia, vision problems, and pulmonary disease) were not severe. (D.E. 7 at 4–5.) Rodriguez argues that the ALJ's step-two severity determination contains very little "articulation of the ALJ's rationale in disregarding the obvious combined impact of these conditions on [Rodriguez's] ability to engage in competitive work." (D.E. 7 at 5.) Rodriguez does not challenge the ALJ's severity determination as to the individual non-severe impairments. The Commissioner responds that the ALJ did not err at step two because substantial evidence supported the ALJ's reasons for determining that Rodriguez's chronic kidney

disease, edema, anemia, vision problems, and pulmonary disease were non-severe. (D.E. 8-1 at 4–5.)

The ALJ found Rodriguez's visual impairment to be non-severe. Hospital records showed that her uncorrected vision was normal, she did not complain of any significant related symptoms, and her vision problems remained stable. (Tr. 13, 452–53.) The ALJ found that Rodriguez's pulmonary disease was non-severe because her hospital records showed that her respiratory examinations were within normal limits. (Tr. 13, 451–52, 553, 556, 578, 584, 593, 616, 644.) The ALJ found that Rodriguez's kidney disease was not severe given that she did not seek relevant treatment and did not report any significant symptoms. (Tr. 13, 39, 609.) The ALJ found Rodriguez's edema to be non-severe because the reported symptoms were not serious and her conditions remained stable with treatment. (Tr. 13, 553, 556, 575–76, 591, 593.) Finally, the ALJ found Rodriguez's anemia to be non-severe because she did not require blood transfusion, and her symptoms remained stable throughout the period that she was hospitalized in February 2014 and December 2015. (Tr. 13, 574, 579, 581.) The ALJ did not make an express finding as to the severity of the combined effects of Rodriguez's impairments.

While it is preferable that an ALJ's decision clearly state each standard and the supporting facts, a "failure to expressly list or refer to each issue does not mean that the judge did not consider them." *Lewis v. Barnhart*, 431 F. Supp. 2d 657, 664

(E.D. Tex. 2006). Similarly, "[t]he fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). Thus, even where the clarity of an ALJ's written decision may be lacking, the analysis must focus on "whether [the decision] clearly reflects that it was made without regard to applicable law." *Lewis*, 431 F. Supp. 2d at 664.

As will be discussed below, the ALJ's decision expressly stated that he considered the combined effects of the impairments and the entirety of the evidence throughout the remaining steps of the sequential analysis. Namely, the ALJ stated that he took into account the combined effect of Rodriguez's morbid obesity and pain at the "2nd through 5th steps of the sequential disability evaluation process." (Tr. 14.) Nothing in the record shows that the combined effects of the individual non-severe impairments were severe. As discussed above, substantial evidence supports the ALJ's severity determination.

Rodriguez argues that the ALJ should have obtained an updated consultative examination to complete the step-two severity analysis. (D.E. 7 at 5.) The Commissioner responds that the ALJ made no error because the decision to obtain a consultative examination is up to the ALJ's discretion. (D.E. 8-1 at 5.) The Commissioner argues that Rodriguez has not shown that the additional

examination was necessary for the ALJ to make a disability determination. (D.E. 8-1 at 5.)

The ALJ had no duty to order an updated consultative exam. That duty may arise where "the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision" or where the claimant "raise[s] a suspicion . . . necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. §416.1444." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Here, Rodriguez did not raise the suspicion necessary to require the ALJ to order a consultative examination. There is no indication in the record before the court that the medical records were incomplete, or that an additional consultative exam would have uncovered new facts.

Even if the ALJ did commit any of the errors that Rodriguez raises, an error at step two rarely constitutes reversible error, where, as here, the ALJ conducts the remaining steps of the five-step sequential analysis. *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011). "The real problem occurs later in the analysis, where the ALJ is required to consider the effect of all medically determinable impairments, severe or not, in calculating the claimant's RFC." *Id.*

The ALJ completed all five steps of the disability determination. Throughout the remaining steps of the sequential analysis, the ALJ considered all of

Rodriguez's impairments, combined and singularly, and their impact on her ability to work, as will be discussed in detail below. Had the ALJ found the combined effect of Rodriguez's impairments to be severe, he would still have proceeded to the RFC analysis and reached the same conclusion. Therefore, to the extent that the ALJ made any error at step two, the error is harmless and does not justify a remand. *See Groberg*, 415 F. App'x at 67.

### B. Listing equivalence

Rodriguez argues that the ALJ erred at step three in failing to obtain an updated medical opinion as to whether Rodriguez's combined impairments met or equaled a listed impairment. (D.E. 7 at 6–7.) The Commissioner claims that Rodriguez made no showing that it was necessary for the ALJ to obtain the opinion of a medical expert about listing equivalency. (D.E. 8-1 at 7–8.)

The responsibility to determine whether a claimant meets or equals a listing is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Therefore, an ALJ can interpret medical evidence to determine whether the claimant's impairment met or equaled a listed impairment. In general, the ALJ's decision to consult a medical expert or advisor is a discretionary one. *See Haywood v. Sullivan*, 888 F.2d 1463, 1467–68 (5th Cir. 1989) ("[N]othing indicates that a [medical advisor's] evaluation of the post-hearing evidence was required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's

allegations."). The decision to obtain an additional expert examination is solely within the ALJ's discretion unless the record establishes that another examination is necessary. *See Jones*, 829 F.2d at 526.

Here, the state agency consultative examiner's report, dated September 9, 2014, was the only medical opinion evidence in the record. (Tr. 451–59.) Another medical opinion was not necessary for the ALJ to determine whether Rodriguez's combined impairments met or equaled a listed impairment. The hospital records postdating the state agency examiner's medical opinion were available to the ALJ, and the ALJ considered those records.  (Tr. 13–14, 15–19.) In the decision, the ALJ expressly noted that he considered all evidence including the combined effects of Rodriguez's medical impairments: "The claimant does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments . . . ." (Tr. 13 (emphasis added).)  There is nothing to indicate that an updated medical opinion would have altered the ALJ's equivalency determination.

Nonetheless, Rodriguez argues that an additional medical opinion "might very well have produced a listing equivalence." (D.E. 7 at 7.) At step three, a claimant has the burden of showing that she meets or equals a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "For a claimant to qualify for benefits by showing that [her] unlisted impairment[] or *combination of*

*impairments* is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added), *superseded by statute on other grounds*, Pub.L. 104–193, 110 Stat. 2105. In other words, for a claimant to claim disability at step three based on the combined effect of the impairments, the claimant must specify a listed impairment that is closely analogous to the combined effects and show that she met the requirements of the listing. 20 C.F.R. § 416.926(b)(3).

Here, Rodriguez does not even specify which listing may have equaled the combined effects of her impairments. Rodriguez merely speculates that the combined effects of her severe and non-severe impairments "might very well have produced a listing equivalence." (D.E. 7 at 7.) Mere speculation does not satisfy Rodriguez's burden of proof at step three. *See Johnson v. Bowen*, 851 F.2d 748, 752 (5th Cir. 1988) ("Speculation about a possible non-exertional impairment cannot overturn the otherwise proper use of the administrative tables."); *see also Bailey v. Gardner*, 269 F. Supp. 100, 107 (S.D. W. Va. 1967) ("[T]he award of benefits cannot rest upon imagination, speculation, conjecture or sympathy—only credible proof in some form will suffice.").

The court finds no error at step three.

## C. RFC determination

Rodriguez argues that the ALJ erred in determining her RFC by not considering all of her medically determinable impairments: namely, (i) the impairments that the ALJ found to be non-severe and (ii) congestive heart failure (CHF) with cardio vascular arrest (CVA) that the ALJ found to be severe. (D.E. 7 at 5–6.) Rodriguez also argues that the ALJ was not qualified to interpret the medical data as to whether the combined effects of her impairments limited her ability to work. (D.E. 7 at 6–7.) In a related argument, Rodriguez claims that the ALJ's reliance on the VE's testimony was improper because the ALJ's hypothetical question to the VE reflecting Rodriguez's RFC did not account for all of her medically determinable impairments. (D.E. 7 at 6.)

### i. Non-severe impairments

Rodriguez claims that the ALJ did not consider her non-severe impairments in determining her RFC. (D.E. 7 at 5.) The Commissioner responds that the ALJ considered all medical evidence to assess the RFC, including the non-severe impairments. (D.E. 8-1 at 6.)

An ALJ must consider all medical and nonmedical evidence to assess the RFC, including evidence pertaining to the claimant's non-severe impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5. Here, the ALJ did consider Rodriguez's non-severe impairments to

determine her RFC. First, the ALJ expressly stated in his decision that "[a]ll impairments severe **and non-severe** have been considered in assessing the residual functional capacity of the claimant." (Tr. 14 (emphasis added).) Second, the ALJ considered the consultative examiner's report completed in September 2014, which evaluated Rodriguez's impairments that the ALJ found to be non-severe: pulmonary disease (Tr. 451, 453, 456), vision problems (Tr. 452–53), edema (Tr. 451, 453), and kidney diuresis. (Tr. 452.) The ALJ expressly noted that he accounted for the consultative examiner's diagnostic impression and examination findings. (Tr. 19.) Third, the ALJ considered Rodriguez's testimony about her chronic kidney disease and cataracts. (Tr. 15.) The ALJ reviewed Rodriguez's hospital records relating to edema, anemia, and chronic kidney disease in the context of the RFC assessment. (Tr. 15–18.) The ALJ made specific mention of the hospital records which indicated that Rodriguez's symptoms worsened when she did not comply with medications, and when she did, her symptoms improved. (Tr. 17–18.) For example, the ALJ considered that when Rodriguez was hospitalized on December 26, 2015, her shortness of breath and chronic congestive heart failure had worsened because Rodriguez had not taken medications as prescribed for two months. (Tr. 18.) The ALJ noted that upon hospitalization, Rodriguez was also diagnosed with chronic kidney disease, hypertension, anemia, non-insulin dependent type II diabetes mellitus, and edema. (Tr. 18.) The ALJ found that

Rodriguez "was treated with medication and was discharged in good condition on December 30, 2015." (Tr. 18.)

The medical records are consistent with the ALJ's findings. Evidence indicated that Rodriguez's vision problems had limited effect on her ability to work. At the hearing, Rodriguez testified that she had limited vision in one of her eyes, but could see, read, and drive. (Tr. 42–43.) The consultative examiner's internal medicine examination report, dated September 9, 2014, also supported the ALJ's RFC assessment as to the vision problems:

> Uses glasses for reading. She has had lens extraction for cataracts on the right side 10 years prior and on the left side, 4 years prior with good results. No laser treatment.
> . . .
> Right uncorrected 20/25, pinhole 20/20. Left uncorrected 20/30, pinhole 20/25.

(Tr. 452–53.)

Hospital records relating to Rodriguez's pulmonary disease were also consistent with the ALJ's determination that it had no bearing on her RFC. Rodriguez received several treatments to control shortness of breath. (Tr. 451–52, 553, 556, 578, 584, 593, 616, 644.) On December 30, 2015, the treating physician noted, "2 month history of gradual worsening of shortening of breath and bilateral lower extremity edema. Patient stated she ran out of her medications about 2 months ago which is when her symptoms started." (Tr. 578.)  But on January 13, 2016, the treating physician noted, "Pulmonary/Chest: Effort normal and breath

sounds normal. No respiratory distress. She has no wheezes. She has no rales. She exhibits no tenderness" (Tr. 584), and "[t]he lungs are clear with no focal consolidation, pleural effusion, or pneumothorax." (Tr. 644.)

Evidence also supported the ALJ's RFC determinations as to Rodriguez's kidney disease. Rodriguez had a biopsy in April 2015, and on July 7, 2015, a renal specialist diagnosed Rodriguez with "IgA nephropathy" and "arteriolar sclerosis, moderate." (Tr. 578, 586.) The physician prescribed Rodriguez medications, including prednisone. (Tr. 587.) But when Rodriguez was hospitalized on December 27, 2015, she reported that she did not follow the prescription:

> She has been seen in Renal OC where she underwent renal biopsy on 4/28/15 that showed IgA Nephropathy. She was recommended to begin prednisone 40 mg PO, but it was never started. She denies any dysuria or hematuria . . . .

(Tr. 609.) On December 30, 2015, the treating physician noted that "[r]enal fellow scheduled patient for follow up appointment following discharge." (Tr. 579.) But the record does not show that Rodriguez actually sought treatment. Rodriguez testified at the hearing that although she was aware that she had to take medicine for her kidney disease, she was not taking medications because she could not afford them. (Tr. 39.)

Rodriguez was diagnosed with anemia, but she did not list it as a medical condition that limited her ability to work. (Tr. 245.) She did not testify about any symptoms related to iron deficiency during the hearing. (Tr. 31–47.) The hospital

records from December 28, 2015, to December 30, 2015, reported that blood transfusion was not necessary. (Tr. 574, 579, 581.)

Critically, on December 28, 2015, Rodriguez saw an occupational therapist, who reviewed her ability to perform activities of daily living. (Tr. 600.) The occupational therapist made note of Rodriguez's diagnosed impairments, including shortness of breath, edema, and chronic kidney disease. (Tr. 600.) The occupational therapist rated Rodriguez's functional levels for feeding, grooming, dressing, toileting, and functional mobility on a scale of 1 to 7, with 1 being the lowest score ("total assist") and 7 being the highest score ("independent"). (Tr. 600.) The occupational therapist found that Rodriguez's ability to perform activities of daily living was "modified independent," and rated all of the tested activities at a score of 6. (Tr. 600.)

These records are consistent with the ALJ's determination that, overall, "[Rodriguez] was not compliant with taking her prescribed medications, which suggested the symptoms were not as limiting as the claimant alleged in connection with this application." (Tr. 18.)

The court finds that the ALJ considered Rodriguez's non-severe impairments in assessing her RFC.

### ii.  Congestive heart failure (CHF) with cardio vascular arrest (CVA)

Rodriguez next claims that the ALJ did not specifically evaluate the severity of her CHF and CVA or reflect them in her RFC. (D.E. 7 at 6.) Rodriguez also argues that the ALJ's RFC finding that Rodriguez can "stand/walk for a total of 6 hours in a day" is not supported by substantial evidence. (D.E. 7 at 6.) The Commissioner responds that Rodriguez cites to no evidence to support this contention. (D.E. 8-1 at 7.) The Commissioner argues that Rodriguez fully recovered from her CVA, and the occupational therapist's assessment supports the ALJ's finding that, despite Rodriguez's CHF, she could perform a range of light work. (D.E. 8-1 at 7.)

The ALJ's decision did consider Rodriguez's CHF and CVA in the RFC context. The ALJ's decision noted that on December 26, 2015, Rodriguez was diagnosed with "acute chronic congestive heart failure exacerbation likely secondary to medication noncompliance." (Tr. 18.) The ALJ also considered the fact that Rodriguez "was treated with medication and discharged in good condition on December 30, 2015." (Tr. 18.) It can be implied from the ALJ's decision that the ALJ concluded that Rodriguez's CHF is treatable with medicine and has no limiting effect on her ability to work.

Substantial evidence supports this conclusion. Rodriguez fully recovered from the CVA and walked normally, spoke normally, and had no neurological

impairments. (Tr. 454, 592, 596, 599, 606, 610, 612.) On December 28, 2015, on the same day that Rodriguez was diagnosed with acute CHF, she saw an occupational therapist. (Tr. 574, 600.) The occupational therapist considered Rodriguez's CHF, yet still rated all functional levels for the tested activities of daily living—feeding, grooming, dressing, toileting, and functional mobility—at 6 ("modified independent"), on a scale of 1 to 7, with 1 being the lowest score. (Tr. 600.) Further, on December 30, 2015, the treating physician noted in the discharge summary that Rodriguez's acute CHF exacerbation was due to medication noncompliance. (Tr. 578.) On January 12, 2016, Rodriguez was "discharge[d] home in no acute distress." (Tr. 583.)

These records show that the ALJ considered Rodriguez's CHF with CVA in assessing her RFC but reached the conclusion that it had no limiting effect. This finding is supported by substantial evidence, and Rodriguez did not show that it was made without regard to the law.

### iii. Combined effects of all impairments

Rodriguez argues that the ALJ should have consulted a medical expert about the combined effects of her impairments because the ALJ was not qualified to interpret the medical data. (D.E. 7 at 6–7.) The Commissioner argues that the ALJ can interpret medical evidence to assess the RFC because an RFC determination necessarily includes an evaluation of the medical evidence. (D.E. 8-1 at 8.)

The assessment of the RFC is reserved for the Commissioner. *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Therefore, an ALJ can interpret medical evidence to determine a claimant's capacity to work. *Id.* In making a disability determination, an ALJ must analyze the disabling effect of the impairments individually and for their cumulative impact. *See Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000); *see also* 20 C.F.R. §§ 404.1523, 416.923.

In general, the ALJ's decision to consult a medical expert or advisor is a discretionary one. *See Haywood v. Sullivan*, 888 F.2d 1463, 1467–68 (5th Cir. 1989) ("[N]othing indicates that a [medical advisor's] evaluation of the post-hearing evidence was required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations."). There is no special rule requiring the ALJ to consult a medical expert about the combined effects of the claimant's individual impairments.

The record does not show that it was necessary for the ALJ to consult a medical expert. Rodriguez relies only on the fact that an ALJ is not a medical expert. (D.E. 7 at 7.) The ALJ's entire decision indicates that the ALJ considered all evidence of impairments and their combined effects. As discussed above, the ALJ considered the combined effects of Rodriguez's impairments at step three. (Tr. 13–14.) At step four, the ALJ stated that "[t]he above [RFC] assessment is supported by the evidence when ***considered as a whole***." (Tr. 20 (emphasis

added).) For example, the ALJ expressly considered the combined effects of Rodriguez's morbid obesity with other impairments:

> These considerations [of the combined effects of obesity] have been taken into account in reaching the conclusions herein at the 3rd step of the sequential evaluation, *as well as the 2nd through 5th steps of the sequential disability evaluation process* . . . .

(Tr. 14 (emphasis added).)

The ALJ's RFC determination is supported by substantial evidence. The hospital records showed that Rodriguez was intermittently hospitalized, but her medication noncompliance necessitated the hospitalizations. (Tr. 33–34, 39, 434, 436, 443, 556, 562, 574, 581, 577–78, 609, 615.) Three months after the alleged disability onset date, the consultative examiner did not find Rodriguez's symptoms to be disabling. (Tr. 451–59.) On December 28, 2015, an occupational therapist assessed Rodriguez's ability to perform activities of daily living at 6 ("modified independent"), on a scale of 1 to 7. (Tr. 600.) These records support the ALJ's RFC assessment. The ALJ was not required to consult a medical expert about the combined effects of Rodriguez's impairments to determine her RFC.

### iv. The ALJ's hypothetical question to the VE

Rodriguez argues that the ALJ's reliance on the VE's testimony was improper because the ALJ's hypothetical question about jobs that a person with her RFC could perform did not account for all of her medically determinable

impairments. (D.E. 7 at 6.) The Commissioner responds that the ALJ's hypothetical question was not erroneous because the question incorporated all of Rodriguez's limitations recognized by the ALJ. (D.E. 8-1 at 8–9.)

As discussed already, the ALJ's RFC assessment is supported by substantial evidence. Thus, the ALJ's hypothetical question reflecting the RFC was not defective. Further, Rodriguez's counsel had the opportunity to cross-examine the VE (Tr. 47–50), as required by law. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Therefore, there was no error in the ALJ's reliance on the VE.

### D. Credibility evaluation

Rodriguez argues that the ALJ failed to conduct a meaningful evaluation of her credibility. (D.E. 7 at 7–8.) She argues that the ALJ did not follow the Social Security Ruling requiring an ALJ's decision to contain specific reasons for determining the credibility of the claimant's statements about the symptoms and its functional effects. (D.E. 7 at 7–8.) Rodriguez claims that the ALJ's determination of her credibility is "conclusory, unrelated to any specific findings by the ALJ or evidence cited from the record, and perfunctory." (D.E. 7 at 8.) The Commissioner responds that the ALJ made a supported credibility determination based on the consideration of all medical evidence, physical examinations, and state agency physicians' findings. (D.E. 8-1 at 9–10.)

The ALJ complied with the Social Security Ruling (SSR) 16–3P[1] in all aspects. First, the ALJ followed the two-step process required by the Ruling. (Tr. 15–21.) Under that Ruling, the ALJ should (1) determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms and then (2) decide how intense and persistent the symptoms are and to what extent the symptoms limit the claimant's ability to perform work-related activities. 2017 WL 5180304, at *3–4. SSR 16–3P requires an ALJ to review the entire record to evaluate the claimant's symptoms:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16–3P, 2017 WL 5180304, at *4.

At the first step, the ALJ identified Rodriguez's medically determinable impairments: hypertension, congestive heart failure with a history of cerebrovascular accident, diabetes mellitus, morbid obesity, vision problems, pulmonary disease, chronic diabetic and hypertensive renal disease, edema, and anemia. (Tr. 12–13.)

---

[1] The ALJ relied on an outdated Agency policy governing the credibility determination (Soc. Sec. Rul. 96–7P) instead of the updated policy (Soc. Sec. Rul. 16–3P), *see* Soc. Sec. Rul. 16–3P, 2017 WL 5180304, at *1. (16–3P applies to decisions made on or after March 28, 2016.) That error is harmless because the ALJ also complied with the requirements of the new policy.

At the second step, the ALJ reviewed her testimony, hospital records, and agency examination records, non-medical evidence (activities of daily living, restrictions, and symptoms), and Rodriguez's subjective allegations:

> The medical records and the claimant's activities of daily living support the residual functional capacity. While the claimant's impairments are severe, they are not totally disabling and do not preclude the performance of all substantial gainful activity. However, the undersigned did take into consideration pain, fatigue and the effects of medication in assessing the residual functional capacity. To the extent they are consistent and supported by the medical records, the claimant's subjective allegations have been considered and incorporated into the above outlined residual functional capacity. Even if not specifically mentioned in this decision, the undersigned has considered all of the evidence of record.

(Tr. 20.) The ALJ then determined that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the evidence . . . ." (Tr. 17.) Therefore, the ALJ complied with SSR 16–3P's two-step evaluation requirement.

Second, the ALJ considered Rodriguez's medication history in compliance with SSR 16–3P. The Ruling provides that a claimant's failure to seek medical treatment is relevant to evaluating the credibility of her alleged symptoms:

> an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed [are considered] when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities . . . .

2017 WL 5180304, at *9. The Ruling also requires an ALJ to review the "possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints" before discrediting the alleged symptoms. *Id.* The factors that an ALJ may account for in this review include the claimant's economic circumstances: "An individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *10. The Ruling leaves the ultimate credibility determination to the ALJ's discretion. *See* SSR 16–3P, 2017 WL 5180304, at *9.

Here, the ALJ's decision expressly considered Rodriguez's hearing testimony that she could not afford her medications. (Tr. 15, 39.) Despite that consideration, the ALJ still found that Rodriguez's impairments could have been remedied or controlled by treatment. (Tr. 14.) He also found that Rodriguez's poor medication compliance and lack of treatment suggested that her symptoms were not as limiting as she alleged them to be in her application. (Tr. 19.) This court does not "reweigh the evidence in the record . . . or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton*, 209 F.3d at 452. The ALJ complied with SSR 16–3P's requirements. Rodriguez did not show that the ALJ otherwise made a reversible error.

Third, the ALJ properly explained the reasoning behind the credibility determination, pursuant to SSR 16–3P. The Ruling requires the ALJ to explain his credibility determination. "[I]t is not sufficient for our adjudicators to make a single, conclusory statement . . . ." 2017 WL 5180304, at *10. The Ruling also mandates that the findings should be based only on the evidence in the case record. *Id.*

Here, the ALJ explained how he made the credibility determinations:

> [T]he undersigned did take into consideration pain, fatigue and the effects of medication in assessing the residual functional capacity. To the extent they are consistent and supported by the medical records, the claimant's subjective allegations have been considered and incorporated into the above outlined residual functional capacity. Even if not specifically mentioned in this decision, the undersigned has considered all of the evidence of record. . . .

> The claimant's subjective symptoms, including pain[,] are of only a mild degree to moderate degree and tolerable to claimant for the level of work, residual functional capacity and work limitations as found. . . .

> The question is whether the claimant's fatigue is so severe as to preclude any sustained, full-time work activity. Given the medical evidence of record, daily activities and other progress notes, though the claimant may experience some fatigue, the undersigned finds this symptom is not so severe as to preclude all work activity.

(Tr. 20.)

This explanation is sufficient to discharge the ALJ's obligation to explain his credibility determination. *See* SSR 16–3P, 2017 WL 5180304, at *10. The ALJ's credibility determination was not conclusory. The ALJ complied with SSR 16–3P.

### E. Finding on whether Rodriguez could maintain employment

Finally, Rodriguez argues that, at step five, the ALJ was required to prove that she could not only obtain but also maintain her employment. (D.E. 7 at 7.) The Commissioner argues that the ALJ did not have to make that specific finding because there is no evidence that Rodriguez's impairments waxed and waned, as defined by the Fifth Circuit. (D.E. 8-1 at 10.)

Rodriguez relies on Fifth Circuit case law, which requires a separate finding that a claimant can maintain a job where an ailment "waxes and wanes" in its manifestation of the disabling symptoms. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). Examples include the following: mental impairment that limited the claimant's ability to work to only short spurts at a time, *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986), hyperkeratosis that intermittently caused extreme pain to the claimant's feet, *Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988), and degenerative disc disease that caused a loss of movement in the claimant's legs every number of weeks. *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002).

The Fifth Circuit has held that a claimant's claim that he had "good days and bad days" was not enough to show an ailment that waxes and wanes because "[i]t

31

is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). The Fifth Circuit has also held that where "nothing in the record suggests that [the claimant] can work only in short spurts," the ALJ is not required to make a separate finding on the claimant's ability to sustain the job. *Frank*, 326 F.3d at 621.

Here, similar to *Frank*, the record "does not suggest that there is any difference between the issue of [the] ability to work and [the] ability to sustain work." *Frank*, 326 F.3d at 621. There is no evidence in the record that suggests that any of Rodriguez's impairments were due to an illness that waxes and wanes. Rodriguez's hospital records consistently note that her repeated, intermittent hospitalizations were attributable to her decision not to take the prescribed medications. (Tr. 15, 17–19, 434, 436, 443, 556, 562, 574, 577–78, 581, 609, 615.) It would not only be wrong but impractical for the court to require an ALJ to make a separate factual finding on whether the claimant can maintain employment every time the claimant's symptoms worsen due to the claimant's medication noncompliance.

The ALJ was not required to make a separate finding as to whether Rodriguez could maintain employment.

**5. Conclusion**

The record reflects that the ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for summary judgment be GRANTED, and Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72.

Signed at Houston, Texas on January _____3_____, 2019.

_____

Peter Bray
United States Magistrate Judge